UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK PAVELKA,
NICOLA PAVELKA,

        Plaintiffs,

v.

        Case No. 14-cv-10706
        HON. GERSHWIN A. DRAIN

ALLSTATE PROPERTY AND
CASUALTY INSURANCE
COMPANY,

        Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [#19]

**I.  INTRODUCTION**

In October 2012, the home and personal property of Plaintiffs, Patrick and Nicola Pavelka, was destroyed in a fire. Two months after the fire, Plaintiffs submitted sworn statements concerning their total loss claims to their home insurer, Defendant, Allstate Property and Casualty Insurance Company ("Allstate"). On February 13, 2014, Plaintiffs filed the instant Complaint against Allstate for breach of their insurance contract. Plaintiffs specifically allege that Allstate has failed to make timely payments on their damage claims.

On February 17, 2015, Magistrate Judge Michael J. Hluchaniuk conducted a settlement conference with both parties. The parties settled Plaintiffs' breach of contract claims for building loss damage and the additional living expenses.

Presently before the Court is Plaintiffs' Motion for Partial Summary Judgment [#19], filed on November 10, 2014. Plaintiffs move for partial summary judgment as to the

1

applicability of Allstate's judicial estoppel defense. Plaintiffs also seek an order for an appraisal of their personal property. Additionally, they request that the appraisal is based on replacement cost and/or actual cash value. Plaintiffs finally note that this motion addresses neither their insurance claims relating to the demolition and damage of "other structures" nor their claims for 12-percent interest due to Allstate's delay of payment.

On February 21, 2015, this Court conducted a hearing concerning the applicability of Allstate's judicial estoppel defense and Plaintiffs' request for an appraisal. For the reasons discussed below, the Court will grant the motion on both of the issues raised by Plaintiffs.

## II. FACTUAL BACKGROUND

Patrick Pavelka is a former plastics engineer. In March 2005, he sustained a traumatic brain injury that left him permanently disabled and unable to work. Soon thereafter, Patrick Pavelka and his wife, Nicola Pavelka, began to live solely from the income that Mrs. Pavelka made as a registered nurse. Unable to meet their debts, in February 2010, the Pavelkas filed for Chapter 13 bankruptcy. Their bankruptcy case later turned into a Chapter 7 proceeding.

On or about October 19, 2012, Plaintiffs' home and personal property, located in Clarkston, Michigan, was destroyed by a fire. On June 1, 2012—four months prior to the home fire and two months after the conclusion of the Chapter 7 bankruptcy proceedings—Plaintiffs purchased a Homeowners Property and Casualty Policy from Allstate ("Allstate Policy"). At the time of the home's destruction, the Allstate Policy was therefore in effect.[1] The Allstate Policy covers building loss, structural damages, and the loss of personal property.

The Plaintiffs notified Allstate that they had suffered from the loss of their home and personal property and that, as a result, they were incurring additional living expenses. In addition, on or about December 24, 2012, Plaintiffs submitted to Allstate a "Sworn Statement in

---

[1] The policy term ran from June 1, 2012, to June 1, 2013. Plfs.' Mot. Summ. J., Ex. C.

Proof of Loss." Allstate received this statement shortly after December 27, 2012. The statement included their building damage claim as well as their claims for damage to other structures and demolition.

On or about January 16, 2013, Plaintiffs submitted another Sworn Statement in Proof of Loss regarding their personal property. In the sworn statement, Plaintiffs asserted that the replacement cost of their personal property was $317,292.28; the actual cash value of Plaintiffs' personal property amounted to $268,809.56. This amount exceeds the Allstate Policy limits of $254,618.00 for personal property loss. Plfs.' Mot. Summ. J., Ex. C. Plaintiffs further listed 3,704 items as inventory.

Plaintiff's total loss claims were referred to Allstate's Special Investigation Unit because local authorities determined that the fire was caused by an act of arson. Allstate suspected that Plaintiffs played a part in the arson. The timing of the issuance of the Allstate Policy and information that Plaintiffs had been involved in a number of other insurance claims in addition to other factors played a part in Allstate's suspicion. *See* Def.'s Answer to Plfs.' Mot. Partial Summ. J. 2-3.

Allstate conducted an investigation but found no wrongdoing on the part of the Plaintiffs. Allstate asserts that the delay in payment of Plaintiffs' building loss and additional living expenses claims was a result of its investigation. At present, Allstate has tendered $41,765.00 to compensate for Plaintiffs' personal property loss claim.

### III. LAW AND ANALYSIS

#### A. Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file,

3

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The party seeking summary judgment "bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). The evidence presented must be such on which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Discussion

In the present motion, Plaintiffs argue that Allstate breached the insurance policy by failing to pay for the total loss of their personal property claim. Allstate, on the other hand, contends that Plaintiffs have misrepresented the total cost of their personal property loss. To support its argument, Allstate points to Plaintiffs' 2010 bankruptcy petition.

Allstate asserts that Plaintiffs should have calculated their personal property claim in the same manner that they calculated the value of their personal property in their 2010 bankruptcy schedules. Plaintiffs' bankruptcy petition utilized liquidation and "garage sale" values. The Allstate Policy dictates the application of replacement cost or actual cash value in estimating loss of personal property.

Allstate asserts the judicial estoppel defense bars Plaintiffs present personal property loss claim. Both parties move for a determination, as a matter of law, as to the applicability of the judicial estoppel defense. In addition, Plaintiffs seek an order for an appraisal of their personal property purportedly destroyed in the home fire.

### 1. Defendant's judicial estoppel doctrine as an affirmative defense is inapplicable.

Judicial estoppel is an equitable doctrine that "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (citing *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001)). The doctrine therefore "'preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id.* (quoting *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir. 2002)). The Sixth Circuit has further described the doctrine of judicial estoppel as a rule against "playing fast and loose with the courts" or "hav[ing] [one's] cake and eat[ing] it too." *Id.* (quoting *Reynolds v. Comm'r,* 861 F.2d 469, 472 (6th Cir. 1988)).

Judicial estoppel is a powerful defense. To prevent abuse of the defense, the Sixth Circuit has warned that it should be applied with caution to "avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (citing *Eubanks v. CBSK Fin. Grp., Inc.* 385 F.3d 894, 897 (6th Cir. 2004)).

Allstate asserts the judicial estoppel doctrine in order to justify its withholding of payment on Plaintiffs' personal property claims. Allstate contends that Plaintiffs should be estopped from pursuing the total cost of their personal property loss claim on the ground that it differs significantly from the value that they recorded in their previous bankruptcy schedules. For this reason, and as mentioned above, Allstate has only paid $41,765.00 of Plaintiffs' personal property loss.

In response, Plaintiffs request that the Court bar Allstate's use of judicial estoppel as an affirmative defense. In bankruptcy, Plaintiffs assert that they assigned either a liquidation value or garage sale value to each of their personal items. The Allstate Policy, however, states that an appraisal of personal property should either use replacement cost or actual cash value. Accordingly, Plaintiffs contend that the Allstate Policy provision should govern how their personal property should be assessed.

Plaintiffs further argue that, as a general proposition, value determinations made in bankruptcy proceedings are not binding in a completely separate proceeding. The Supreme Court, however, has found that, "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle." *New Hampshire v. Maine*, 532 U.S. at 750. The Court is therefore hesitant to adopt such a hard and fast rule under the set of facts presented here, and particularly where a valid contract is at play. This determination is further underscored by the disparate valuations between Plaintiffs' prior personal property bankruptcy schedule and their personal property estimations alleged here.[2]

The Court will instead apply the factors outlined in *New Hampshire v. Maine* to determine whether application of the judicial estoppel doctrine is proper. In *New Hampshire v. Maine*, the Supreme Court identified the following three-factor inquiry that lower courts should use to determine the applicability of judicial estoppel. Courts should consider:

> (1) a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings [sic] would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive

---

[2] Defendant further asserts that the personal property damage claims are valued at an 1100-percent increase from the valuations included on the bankruptcy petition.

> an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. at 750.

These factors are only considerations and are not alone dispositive. The Court reviews them in turn.

### a. *Plaintiffs' latest position is not inconsistent with its earlier position.*

As an initial matter, and at a bare minimum, a party's later position must be clearly inconsistent with its earlier position in order for judicial estoppel to apply. *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008); *Paschke v. Retool Indus.*, 445 Mich. 502, 510 (1994) ("[I]n order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent."). In other words, the court must first determine whether Plaintiffs "assumed a position that was contrary to the one that [they] asserted under oath in the bankruptcy proceedings." *Stephenson v. Malloy*, 700 F.3d 265, 272 (6th Cir. 2012).

Allstate challenges Plaintiffs' use of actual cash and replacement cost values to calculate the total amount of their personal property loss claims. Allstate intends to estop Plaintiffs' application of these values based on their prior bankruptcy petition, in which Plaintiffs used liquidation and garage sales values to assess the costs of their personal property.

To support its estoppel defense, Allstate asserts that the earlier valuation of personal property contained in Plaintiffs' bankruptcy schedules is clearly inconsistent with those in the Sworn Statement in Proof of Loss that Plaintiffs submitted. In their bankruptcy petition, Plaintiffs valued their personal property at $24,500.00. In a 245-page inventory submitted to Allstate, Plaintiffs valued their personal property at $268,809.56 on an actual cash value basis, and at $317,292.28 on a replacement cost basis. Allstate further emphasizes that Plaintiffs' bankruptcy concluded only two months prior to the fire that destroyed Plaintiffs' personal

8

property, suggesting that Plaintiffs are misleading the Court about the true value of their personal assets.

To reiterate, Allstate challenges the values to be applied in the calculation for the loss of Plaintiffs' personal property. As Allstate points out, the total value that Plaintiffs now assign to their personal property clearly differs from the total value that they assigned in prior bankruptcy proceedings. Yet this discrepancy in total value does not sufficiently address the immediate inquiry. As applied to this case, this factor requires Allstate to demonstrate the inconsistency of Plaintiff's position in regard to *how* Plaintiffs' property is calculated. Allstate mistakes the difference in total value of the personal property in the two proceedings as conclusive evidence of an inconsistent position in valuation method. This difference in total value, however, does not indicate conclusively that Plaintiffs' positions concerning valuation method are inconsistent. There exists a legitimate explanation regarding why the total values in the prior bankruptcy proceedings and the present breach of contract proceedings differ.

In February 2010, Plaintiffs filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code. Chapter 13 proceedings permit individual debtors to develop a plan of repayment of their debts. *In re Pearson*, 773 F.3d 751, 753 (6th Cir. 1985). The Code's statutory purpose is to allow a debtor "to retain his property and [to] avoid the stigma of a "straight bankruptcy." *Id.* The Plaintiffs' Chapter 13 bankruptcy proceedings, however, were subsequently turned into Chapter 7 bankruptcy proceedings. Chapter 7 bankruptcy proceedings are otherwise known as liquidation proceedings or a "straight bankruptcy." *Id*.

In their Chapter 7 bankruptcy schedules, Plaintiffs assigned liquidation and garage sale values to their personal property. On this second point, Allstate contends that Plaintiffs deliberately misrepresented the value of their personal assets.

9

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") is an amendment to the Bankruptcy Code. Allstate asserts that, under Section 506(a)(2) of BAPCPA, Plaintiffs were required to estimate their personal property using replacement cost value. For this additional reason, Allstate further seeks to preclude Plaintiffs from assessing their claims using replacement cost or actual cash value.

If Allstate's interpretation of the BAPCPA was correct, Plaintiffs prior and present positions would appear to be clearly inconsistent. Allstate, however, has erred in its interpretation of Section 506(a)(2). The provision only applies "with respect to personal property securing an allowed claim." 11 U.S.C. § 506(a)(2). Plaintiffs assert that all of their personal property listed in the bankruptcy petition was non-collateral. Plfs.' Reply Br. in Support of Plfs.' Mot. Partial Summ J. 5 (citing Ruskin Aff. ¶ 5).[3] Thus BAPCPA does not require individual debtors in bankruptcy, such as Plaintiffs, to use replacement cost value in assessing their unsecured personal property in a bankruptcy schedule.

Likewise, Plaintiffs' application of liquidation or garage sale values to their personal property in bankruptcy was not incorrect. Section 506(a)(2) did not amend the standard for non-collateralized property. Applying liquidation or garage sale values to personal property in a Chapter 7 liquidation proceeding is an accepted practice. Plfs.' Partial Mot. Summ. J., Ex. L, ¶ 5; Plfs.' Reply Br. in Support of Plfs.' Mot. Partial Summ J. 5, Ex. 2, ¶ 6. Therefore the value assigned to Plaintiffs' personal property in bankruptcy does not serve as evidence that Plaintiffs previously undervalued their personal property.

As a final matter, Allstate does not argue that actual cash value and replacement cost are in any manner synonymous to garage sale or liquidation values. Even so, Plaintiffs have amply

---

[3] David Wm. Ruskin is a standing Chapter 13 trustee in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division. From 1982 to 2000, he was the sole standing trustee. In 1993, he served as president of the National Association of Chapter 13 Trustees. Ruskin Aff. ¶ 1-2.

10

demonstrated that the two sets of values are not, in fact, the same. Karlen Koneczny is an Allstate claims adjuster whose primary job duty is to settle homeowner claims. Koneczny testified that, under the Allstate Policy, there are only two sets of values that could be used to evaluate total loss claims—replacement cost and actual cash value. Koneczny Dep. 14. Koneczny also testified that replacement cost is defined as the cost for the policyholder to replace that item with a new item of like kind and quality. *Id.* at 15. In addition, Koneczny testified that Allstate defines actual cash value as the replacement cost less depreciation. *Id.* at 16. Allstate calculates depreciation as "the item, the life expectancy of the item, the condition of the item, [and] age of [the] item." *Id.*

In summary, Allstate's failure to take into account *why* the value of Plaintiffs' personal property differs is fatal to its argument that judicial estoppel should apply to this matter. Based on definitions provided by Allstate's representative, the value determinations in Plaintiffs' prior bankruptcy petition provide little to no relevance to its present judicial estoppel challenge. The parties properly contracted for the valuation formula that Plaintiffs applied, and for which Allstate now disputes, in this subsequent proceeding. Therefore, Plaintiffs' application of these distinct values in their prior bankruptcy proceeding and in their latest proceedings are not clearly inconsistent.

### b. *Judicial acceptance of Plaintiffs' prior position would not create a perception of being misled.*

The second factor is the cornerstone of what Michigan courts refer to as the "prior success model" of judicial estoppel. *Spohn v. Van Dyke Pub. Schs.*, 296 Mich.App. 470, 480 (2012) ("'[A] party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding…. [T]he mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there

must be some indication that the court in the earlier proceeding accepted that party's position as true.'").

Allstate must demonstrate that "[Plaintiffs have] succeeded in persuading a court to accept that party's earlier position." *New Hampshire v. Maine*, 532 U.S. at 750. A court's adoption of a party's contrary position can occur "either as a preliminary matter or as part of a final disposition." *Stephenson*, 700 F.3d at 272. It is not necessary for "the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits." *Reynolds v. Internal Revenue Comm'r.*, 861 F.2d 469, 473 (6th Cir. 1988). Courts then review whether "judicial acceptance of [the] inconsistent position in a later proceedings [sic] would create the perception that either the first or the second court was misled." *Id.*

Normally, to establish adoption, it must only be shown that the bankruptcy court confirmed the plan of the party for which judicial estoppel has been invoked. *Spohn*, 296 Mich.App. at 483. This inquiry, however, is unnecessary because the Court has already held that Plaintiff's positions are not clearly inconsistent. As stated above, Allstate contends that Plaintiffs have misrepresented the value of their personal property by applying liquidation or garage sale values instead of replacement cost value. Yet individual debtors are not required to apply replacement cost value to unsecured personal property. The resulting differences between the total values of personal property in the previous and present proceedings are irrelevant to the extent that the parties properly contracted to calculate the total loss of the property differently.

The Court also notes, as relevant to this inquiry, that bankruptcy courts serve a special purpose. They operate under a distinct set of statutes and customs. As a result, what occurs in bankruptcy proceedings will often have little to no relevance to separate, non-bankruptcy proceedings. Thus armed with an understanding of the distinct set of rules under which

12

bankruptcy courts operate, this Court does not find that this inconsistency in the total costs of Plaintiffs' personal property equates to a perception that either court has been misled.

### c. Plaintiffs would not derive an unfair advantage, and their position would not impose an unfair detriment on Allstate if not estopped.

The final factor in this inquiry is determining whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Lorillard Tobacco Co.*, 546 F.3d at 757. Allstate highlights that there exists an 1100-percent increase in the total value of Plaintiffs' personal property in contrast to the value cited in their 2010 bankruptcy petition. Consequently, Allstate contends that "[g]iven the unbelievable discrepancy in the personal property reported to the Bankruptcy Court and the claim being made to Allstate, clearly, [j]udicial [e]stoppel would apply given the inconsistent position being taken by Plaintiffs…." Def.'s Answer to Plfs.' Mot. Partial Summ. J. 14-15.

In essence, Allstate suggests that something is amiss as it relates to the valuation of Plaintiffs' personal property claims. Allstate consequently contends that the valuation procedure, as dictated by the Allstate Policy, is therefore unjust. Allstate asserts that allowing Plaintiffs to recover, with knowledge of this wide valuation discrepancy, would be a "miscarriage of justice." *Id.* at 15.

Judicial estoppel essentially prevents a party from using inconsistent positions to gain favor in the courts. *See Lewis*, 141 F. App'x at 424 (citing *New Hampshire,* 532 U.S. at 749). This is especially so if the contradiction is made "to the prejudice of the party who has acquiesced in the position formerly taken by him." *Lorillard Tobacco Co.*, 546 F.3d at 757.

It is quite significant that Allstate was not a party to Plaintiffs' prior bankruptcy proceedings. Allstate is therefore not prejudiced because Plaintiffs' previous valuation in

personal property had no prior impact on the insurance company. In addition, Allstate fairly negotiated and entered into a valid contract with Plaintiffs regarding the valuation procedure that they now challenge. Plaintiffs now logically pursue execution of this contractually-agreed upon valuation method. Under the totality of these circumstances, the Court is hard-pressed to find an unfair windfall or advantage from which Plaintiffs will benefit to the detriment of Allstate.

In sum, Allstate is bound by the terms of the Allstate Policy. Accordingly, the judicial estoppel doctrine is inapplicable as it concerns the calculation of Plaintiffs' personal property.

As a final matter, Allstate suggests that Plaintiffs have also failed to disclose assets to the bankruptcy court that Plaintiffs now seek to recover in this Court. The Sixth Circuit has held that judicial estoppel can apply to prevent a party from raising a claim or including an asset in a subsequent proceeding that was deliberately excluded from the party's bankruptcy petition, *White*, 617 F.3d at 476, to the extent that such items were not properly exempted from Plaintiffs' bankruptcy schedules. Nonetheless, those questions are not addressed here because the issue has not been properly presented to the Court.

### 2. The Court orders that Plaintiffs' personal property be appraised according to the values specified in the Allstate Policy.

Plaintiffs request that the Court order that their personal property claims be submitted to appraisal. Michigan law requires that each fire insurance policy issued in the state shall contain the following:

> That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party *shall* select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire.

14

MICH. COMP. LAWS § 500.2833(1)(m) (emphasis added).  The remaining portion of this appraisal provision outlines the process for appraisal.

Allstate has not challenged an appraisal.  Allstate, instead, has lingering questions about the personal property that Plaintiffs claim that may, in turn, frustrate the appraisal process.  In particular, Allstate primarily has questions concerning the extensive inventory list and the age of the items listed, which ultimately affects the total value of those items.  These lingering concerns, however, are inevitably a part of the appraisal process.  Nonetheless, Michigan law clearly indicates that an appraisal is required, if requested by either party.  The existence of these issues, accordingly, is not sufficient to halt the appraisal process.  Therefore the request for an appraisal is granted.

### C. CONCLUSION

For the reasons stated above, the Court finds that the doctrine of judicial estoppel as an affirmative defense is not applicable to this case.  Therefore, Plaintiffs' Motion for Partial Summary Judgment as to the use of Defendant's judicial estoppel defense is **GRANTED**.

Plaintiffs' request for an order of appraisal of their personal property, pursuant to Michigan law, is also **GRANTED**.

Plaintiff's Motion for Partial Summary Judgment concerning the breach of contract and additional living expenses claims are **HEREBY MOOT**.

IT IS SO ORDERED.

/s/Gershwin A Drain  
HON. GERSHWIN A. DRAIN  
UNITED STATES DISTRICT COURT JUDGE

Dated: March 18, 2015